IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| RICKY LEE WELKER #0291210, | ) |
| | ) |
| Plaintiff, | ) |
| | ) NO. 3:20-cv-00198 |
| v. | ) |
| | ) JUDGE RICHARDSON |
| DAVIDSON COUNTY SHERIFF'S OFFICE, et al., | ) |
| | ) |
| Defendants | ) |

## ORDER

Ricky Lee Welker, a pretrial detainee in the custody of the Davidson County Sheriff's Office in Nashville, Tennessee, has filed a pro se complaint for alleged violation of his civil rights pursuant to 42 U.S.C. § 1983. (Doc. No. 1.) The matter is before the Court for a ruling on Plaintiff's application to proceed in forma pauperis (IFP). (Doc. No. 2.) The complaint is also before the Court for an initial review pursuant to the Prison Litigation Reform Act (PLRA). 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e.

### I.     APPLICATION TO PROCEED AS A PAUPER

Under the PLRA, a prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). Because it appears from Plaintiff's submissions that he lacks sufficient financial resources from which to pay the full filing fee in advance, the Court **GRANTS** his motion (Doc. No. 2) to proceed IFP in this matter.

Plaintiff is still responsible for paying the full filing fee, however, as required by Section 1915(b). The obligation to pay the fee accrues at the time the case is filed, but the PLRA provides prisoner-plaintiffs the opportunity to make a "down payment" of a partial filing fee and to pay the remainder in installments. Accordingly, Plaintiff is hereby **ASSESSED** a $350 filing fee, to be

paid as follows:

(1) The custodian of Plaintiff's inmate trust-fund account at the institution where he now resides is **DIRECTED** to submit to the Clerk of Court, as an initial payment, "20 percent of the greater of – (a) the average monthly deposits to Plaintiff's account; or (b) the average monthly balance in the plaintiff's account for the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(b)(1).

(2) After the initial filing fee is fully paid, the trust-fund officer must withdraw from Plaintiff's account and pay to the Clerk monthly payments equal to 20% of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10. Such payments must continue until the entire $350 filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

(3) Each time the trust account officer makes a payment to this Court as required by this Order, he or she must print a copy of the prisoner's account statement showing all activity in the account since the last payment made in accordance with this Order and submit it to the Clerk along with the payment. All submissions to the Court must clearly identify Plaintiff's name and the case number as indicated on the first page of this Order, and must be mailed to: Clerk, United States District Court, Middle District of Tennessee, 801 Broadway, Nashville, TN 37203.

The Clerk of Court is **DIRECTED** to send a copy of this Order to the Davidson County Sheriff to ensure that the custodian of Plaintiff's inmate trust account complies with the portion of 28 U.S.C. § 1915 pertaining to payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian **MUST** ensure that a copy of this Order follows Plaintiff to his new place of confinement for continued compliance with this Order.

## II.   INITIAL REVIEW

Title 28 U.S.C. § 1915(e)(2) requires the Court to conduct an initial review of any complaint filed in forma pauperis, and to dismiss the complaint if it is facially frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief. In reviewing the complaint to determine whether it states a plausible claim, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). A pro se pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Plaintiff sues under 42 U.S.C. § 1983 to vindicate alleged violations of his federal constitutional rights. Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

Plaintiff alleges that on February 6, 2020, he was sitting on a stool in his jail cell reading a book during lockdown. (Doc. No. 1 at 5.) Plaintiff's cellmate "went to jump on the top bunk," and "the next thing [Plaintiff] knew," he was "hit in the neck and head." (*Id.*) Plaintiff alleges that "DCSO was on notice because of [his] being housed in a [sic] unsafe enviro[n]ment" and that

Sheriff Daron Hall is involved due to the negligence of his staff. (*Id.*) After the incident, Plaintiff refused to return to the same cell, but he says the bunk is still not fixed. (*Id.* at 5, 7.) He alleges that housing him and others in an unsafe place constitutes cruel and unusual punishment. (*Id.* at 5.) Plaintiff also alleges that it took 24 hours for him to be X-rayed after the accident, and that jail staff accused him of faking his injury. (*Id.*) He says he still has pain in his neck and back. (*Id.*)

Plaintiff sues the Davidson County Sheriff's Office and Sheriff Daron Hall, each in its (or his)"individual capacity" only. (Doc. No. 1 at 2.) He seeks $50,000 from each Defendant. (*Id.* at 6.)

The contours of Plaintiff's rights are the same as those of a convicted prisoner with regard to his claims arising from an allegedly unsafe environment and the denial of adequate medical care. *Miller v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005) ("Although the Eighth Amendment's protections apply specifically to post-conviction inmates, the Due Process Clause of the Fourteenth Amendment operates to guarantee those same protections to pretrial detainees as well.").

It is well established that prison and jail officials have some obligation toward the safety of inmates in their custody. *Farmer v. Brennan*, 411 U.S. 825, 832, 833 (1994). However, "[a] prison official's duty ... is to ensure 'reasonable safety,'" not absolute safety. *Id.* at 844 (citing *Helling v. McKinney*, 509 U.S. 25, 33 (1993)). A prison official may be held liable under Section 1983 only for acting with "deliberate indifference" to inmate health or safety, which requires proof that the official knew that the inmate faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. *Id.* at 834. "Deliberate indifference" is a higher standard than negligence and requires that the official know of and disregard an excessive risk to inmate health or safety; "the official must both be aware of facts

4

from which the inference could be drawn that a substantial risk of serious harms exists, and he must also draw the inference." *Id.* at 837.

Plaintiff's allegations do not rise to that level. He does not allege that the bunk in his cell was known to be unsafe before his injury or that anyone knew that it posed an excessive risk of injury. He does not even explain exactly how he was injured or identify any defect in the bunk that contributed to his injury. And the alleged failure to repair the unspecified defect in the bunk after the fact—after the alleged incident casing his injury—obviously did not cause Plaintiff's injury. Accordingly, Plaintiff fails to state a claim for a constitutional violation in connection with his original injury.

Turning to Plaintiff's claim about his medical care after the incident, it is clearly established that deliberate indifference to a prisoner's serious medical needs "constitutes the unnecessary and wanton infliction of pain" and violates the Eighth Amendment rights of convicted inmates or the Fourteenth Amendment rights of pretrial detainees. *Ruiz v. Martin*, 72 F. App'x 271, 275 (6th Cir. 2003) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Miller*, 408 F.3d at 812. A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 570 (6th Cir. 2013). And again, the "deliberate indifference" necessary to violate the constitution is a higher standard than negligence and requires that the official know of and disregard an excessive risk to the inmate. *Farmer*, 511 U.S. at 837. Mere allegations of medical malpractice or negligent diagnosis and treatment do not state an Eighth Amendment claim for cruel and unusual punishment. *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). "Where a prisoner has received some medical attention and the dispute is over the

adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). To prevail under those circumstances, an inmate must establish that the treatment he received was "so woefully inadequate as to amount to no treatment at all." *Ruiz,* 72 F. App'x at 276 (quoting *Westlake*, 537 F.2d at 860 n.5).

Plaintiff fails to satisfy either prong of this standard. He does not describe any injury so obvious that anyone would know it required emergency attention, and he acknowledges that he had an X-ray the next day. He does not say what the X-ray revealed, what his diagnosed injury was, what treatment he thinks was required, or how he has been further injured by the lack of that treatment. In fact, Plaintiff does not even specify what part of his body was X-rayed. His bare-bones allegation that he is in pain may be grounds for genuine (albeit underinformed) sympathy, but it is not sufficient to establish that he had a serious medical need or that anyone actually knew of and disregarded that need. Plaintiff admits that he received some medical attention and does not allege sufficient facts to establish that the attention he received was constitutionally inadequate.

Moreover, even if Plaintiff stated a constitutional claim with the substance of his allegations, he does not allege facts that would establish the liability of his named Defendants. The sheriff's office is not an entity capable of being sued under Section 1983. *See Mathes v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:10–cv–0496, 2010 WL 3341889, at *2 (M.D. Tenn. Aug. 25, 2010) (collecting Tennessee district court cases concluding that police departments and sheriff's offices are not proper parties to a § 1983 suit). And Plaintiff does not allege that Sheriff Hall was personally involved in either the cause or treatment of his injury, as required to make Hall liable in his individual capacity. *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (requiring personal involvement in the violation at issue for individual liability under § 1983).

Plaintiff suggests that Hall is liable for the "negligence" of his staff, but a supervising official can be individually liable under § 1983 only where "the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016). Thus, "'at a minimum,' the plaintiff must show that the defendant 'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Id.* (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). There are no such allegations in this case.

Even if Plaintiff had named Hall in his official capacity, or if the Court were to liberally construe the complaint against the sheriff's office as a complaint against the Metropolitan Government of Nashville & Davidson County ("Metro") itself, a local government like Metro is not liable under Section 1983 unless the alleged violation occurs pursuant to the government's policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 692 (1978). In this case, Plaintiff does not allege that any of the claimed violations was pursuant to any Metro policy.

### III. CONCLUSION

This action is therefore **DISMISSED** for failure to state a claim upon which relief can be granted. This is the final Order denying all relief in this matter. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b). Any appeal from this Order would not be in good faith as required by 28 U.S.C. § 1915(a)(3).

IT IS SO ORDERED.

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE